Filed 1/8/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| COUNTY OF RIVERSIDE, | |
| Plaintiff and Appellant, | E068516 |
| v. | (Super.Ct.No. RIK1503845) |
| MICHAEL LEE ESTABROOK, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Eric V. Isaac, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Reversed.

Bruce Wagner, Chief Attorney, and Hirbod Rashidi for Plaintiff and Appellant.

No appearance for Defendant and Respondent. 1

Plaintiff and appellant Riverside County Department of Child Support Services (the County) filed a complaint against defendant and respondent Michael Lee Estabrook (Father) seeking $288 per month in child support, as well as any healthcare expenses, for J.L., Father's alleged daughter, whose mother, J.L.1 (Mother), was receiving public assistance.  (Welf. & Inst. Code, § 11457, subd. (a).)  Father requested a judgment of

1

non-paternity. (Fam. Code, § 7636.) The family court entered a judgment of non-paternity and dismissed the County's complaint with prejudice.

The County raises four issues on appeal. First, the County contends the family court erred by not ordering genetic testing. (Fam. Code, § 7551.)[1] Second, the County asserts the family court's decision to apply the marital presumption (§ 7540) is not supported by substantial evidence. Third, the County contends the family court erred by permitting Father to assert the marital presumption (§ 7540) because the presumption may only be raised by the spouses who are in the marriage. Fourth, the County contends the family court's finding of non-paternity (§ 7636) is not supported by substantial evidence. We reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

The County filed a complaint against Father, seeking $288 per month in child support, as well as any healthcare expenses for J.L., due to Mother receiving public assistance. Father filed a verified answer. Father wrote, "This is a child born to [Mother's] current marriage. [D.L. (Husband)] signed a voluntary declaration of paternity as well as the birth certificate. I do not believe I am the father. [Husband] is presumed the father as the minor child was born to their marriage." The County filed a motion for judgment on the issues of parentage, child support, and healthcare expenses.

Father filed a motion to join Husband in the proceedings. Father contended the court needed "to determine parentage prior to making any child support orders."

---

[1] All subsequent statutory references will be to the Family Code unless otherwise indicated.

2

Father's attorney's declaration was included with the motion for joinder. In the declaration, Father's attorney declared Husband was married to Mother during the conception and birth of J.L.; Husband was present during J.L.'s birth; Husband is named on J.L.'s birth certificate; Husband signed J.L.'s birth certificate; and Husband and Mother were cohabitating at the time J.L. was conceived.

Father filed a request for a judgement of non-paternity. Father attached his own declaration to the request. Father declared he was not J.L.'s father. Father asserted J.L. was born "during marriage," and that Husband held J.L. out as Husband's child. Further, Father declared, "Mother . . . unequivocally stated that her husband whom she was married to and living with when the child was born is the father of the minor child."

The County filed a request for genetic testing, as well as an opposition to Father's request for a judgment of non-paternity. The County argued that Father could not use the marital presumption to shield himself from financially supporting J.L. The County contended only Husband and Mother could assert the marital presumption—not Father. The County contended genetic testing was mandated by section 7551, and that it would be premature to enter a judgment of non-paternity prior to receiving the results of the genetic tests.

Father filed a reply. Father asserted that Husband was presumed to be J.L.'s father because Husband was married to Mother. Father contended the marital presumption had to be overcome before the court could order genetic testing. Father contended it was not his burden "to overcome the conclusive presumption" that Husband was J.L.'s father. Father contended genetic testing was not mandated by

section 7551 because parentage was not an issue in the case, due to Husband being J.L.'s presumed father.

The trial court held a hearing in the matter. The County asserted (1) genetic testing was mandatory upon the County's request for such tests; (2) there was no evidence supporting Father's assertion that the marital presumption applied to Husband and Mother; (3) only Husband and Mother could assert the marital presumption; and (4) Mother's public assistance application named Father as J.L.'s father. Father argued that Mother had been served with Father's request for a judgment of non-paternity, and she had not opposed his request.

The family court said that, because "[M]other was married at the time of the conception of this child, . . . the marriage presumption is already there," and therefore Father did not have to assert the presumption nor prove the presumption applied. The County asserted (1) there was no evidence to support a finding that Husband and Mother were married when J.L. was conceived; (2) Father could not assert the marriage presumption as a defense in a child support case; and (3) under section 7551, genetic testing was mandatory upon the County's request.

Father asserted the only evidence in the case had been provided by Father, and it reflected that J.L. was born during Mother and Husband's marriage. Father asserted it was now Mother's burden to disprove the marital presumption, but Mother was not participating in the case. Father contended the family court could not order genetic testing due to the marital presumption causing Husband to be J.L.'s presumed father.

4

The family court said, "If the mother was married to [Husband] at the time of the conception of the child, the presumption kicks in automatically. He doesn't have to raise it. The child is born during the marriage, the presumption kicks in automatically. He's not raising it." The court explained that the County failed to provide evidence that Father had an affair with Mother. The County asserted that Mother named Father on her public assistance application, which caused the County to request genetic testing of Father, and upon the County's request genetic testing was mandatory.

The family court said, "I don't agree with what you said, that the Court shall order genetic testing in this case. I don't agree with that." The court did not provide its interpretation of section 7551. The court concluded, "I would dismiss this with prejudice and grant the judgment for non-paternity. That's the order of the Court."

## DISCUSSION

### A.     MANDATORY TESTING

The County contends the family court erred by not ordering genetic testing because such testing is mandatory upon the County's request.

" ' "When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls." ' " (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630.)

Section 7551 provides, in relevant part, "In a civil action or proceeding in which paternity is a relevant fact, the court may upon its own initiative or upon suggestion made by or on behalf of any person who is involved, and shall upon motion of any party

5

to the action or proceeding made at a time so as not to delay the proceedings unduly, order the mother, child, and alleged father to submit to genetic tests."

The first portion of the statute provides, "In a civil action or proceeding in which paternity is a relevant fact." We understand this plain language as reflecting that an element of ordering genetic tests is that paternity is a relevant fact in the case. The second portion of the statute provides, "the court may upon its own initiative or upon suggestion made by or on behalf of any person who is involved . . . order the mother, child, and alleged father to submit to genetic tests." We understand this second portion of the statute as giving the family court discretion to order a mother, child, and alleged father to submit to genetic tests either on the court's own motion or when requested by "any person who is involved."

The third portion of section 7551 provides, "and shall upon motion of any party to the action or proceeding made at a time so as not to delay the proceedings unduly, order the mother, child, and alleged father to submit to genetic tests." The third portion of the statute requires the family court to order genetic testing of a child, mother, and alleged father, when presented with a timely motion by a party.

In sum, the first and third portions of section 7551 come together to make an order for genetic testing mandatory when the following elements are met: (1) there is a civil proceeding; (2) wherein paternity is a relevant fact; (3) a timely motion for genetic testing has been filed; (4) by a party; and (5) the testing would be for the child, mother, and alleged father.

It is the second element that is at issue in this case. Accordingly, we examine whether paternity was a relevant fact in this child support case. We determine the issues in the case by looking at the pleadings and the relevant law. (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 156; see also *Rocks v. Hamburger* (1948) 89 Cal.App.2d 194, 196.)

The County filed a complaint seeking child support from Father for J.L. In 1975, the United States Congress enacted Title IV-D of the Social Security Act (42 U.S.C., §§ 651-660), which required the states to establish a comprehensive program for both child support enforcement and determination of paternity. (*In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 295.) Federal law requires that, under that program, parent recipients of public assistance assign to the state, as a condition of receiving benefits, any rights to support that they or their children may have. (*City and County of San Francisco v. Thompson* (1985) 172 Cal.App.3d 652, 656.)

In compliance with federal law, California enacted Welfare and Institutions Code section 11477, which requires applicants for public assistance to "assign to the county any rights to support from any other person the applicant or recipient may have on his or her own behalf, or on behalf of any other family member for whom the applicant or recipient is applying for or receiving aid." (Welf. & Inst. Code, § 11477, subd. (a)(1)(B).) The statute provides that receipt of public assistance operates as an assignment by operation of law. (*Ibid.*)

Another provision enacted to ensure compliance with federal law is Welfare and Institutions Code section 11457, which provides, in relevant part, "Money from

7

noncustodial parents for child or spousal support with respect to whom an assignment under Section 11477 has been made shall be paid directly to the local child support agency and shall not be paid directly to the family." (Welf. & Inst. Code, § 11457, subd. (a).)

In sum, the County is seeking to collect child support from Father. In order to collect child support from Father, the County needs to prove that Father is a noncustodial parent. (Welf. & Inst. Code, § 11457, subd. (a).) In the County's complaint, it marked the box indicating that Father's parentage of J.L. needed to be established. Father's answer to the County's complaint reads, "I request a genetic test to determine parentage be done for all children for whom I have checked a 'No' box above." Father marked the "No" box next to J.L.'s name. In addition to Father's request for genetic testing, the County filed a request for genetic testing, in which it "request[ed] that genetic testing be ordered so that paternity can be established." Thus, the pleadings reflect that (1) the County wanted Father's parentage of J.L. to be established, and requested genetic testing; and (2) Father requested genetic testing regarding his parentage of J.L.

In sum, (A) this is a civil proceeding; (B) paternity is a relevant fact in the case, as established by the law and pleadings; (C) the County and Father are parties; (D) the County requested parentage be established, and Father requested genetic testing be conducted; and (E) the testing would be for Father and J.L. Accordingly, the elements of section 7551 have been met. The family court erred by not ordering genetic testing. (§ 7551.)

8

B.      MARRIAGE PRESUMPTION

1.      *CONTENTIONS*

The County contends (1) the family court's finding that the marital presumption applies in this case is not supported by substantial evidence, and (2) the family court erred by permitting a non-spouse to assert the marital presumption.

2.      *SUBSTANTIAL EVIDENCE*

a.      Standard of Review

" ' " 'When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]' " [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot support a finding.' " (*In re Anthony G.* (2011) 194 Cal.App.4th 1060, 1065.)

b.      Law

Section 7540 provides, "Except as provided in Section 7541, the child of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." "Under sections 7540 and 7541, a husband who was cohabitating with his wife at the time of conception is presumed to be the father of his

9

wife's child. The statute itself provides two means of rebutting the presumption: a husband may dispute paternity by requesting blood tests within two years of the child's birth (§ 7541, subd. (b)) and, at any time, by proving he was impotent or sterile at the time of conception. (§ 7540.)" (*In re Marriage of Freeman* (1996) 45 Cal.App.4th 1437, 1444.) In sum, the marital presumption applies when the mother is married and cohabitating with her husband at the time of conception, unless it has been shown that an exception applies. (*Brian C. v. Ginger K.* (2000) 77 Cal.App.4th 1198, 1203-1205.)

c.  Evidence

Father provided his declaration, in which he wrote, "The child was born during marriage under *Family Code § 7540* whereby there is a conclusive presumption that the child of a wife who is cohabitating with her husband, (who is not impotent or sterile) is conclusively presumed to be a child of the marriage. In this case, the mother of the child's husband is holding out that the child as his own under *Family Code §§ 7541 and 7611*." (Boldface omitted.)

The first sentence in the foregoing quote is not informative. "The child was born during marriage" does not indicate to whom Mother was married when J.L. was born. The second sentence in the foregoing quote is not informative because it too fails to identify Mother's husband. Further, it reflects the legal conclusion that Mother's husband held the child out as his own (§ 7611, subd. (d) ["holds out the child as his or her natural child"]). (See *In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, fn. 3 ["We recognize that it is very common for family law practitioners to include argument in their declarations . . . but it is a sloppy practice which should stop"].)

10

Father's declaration does not provide the necessary facts from which one could conclude the marriage presumption applies, e.g., Mother and Husband were married in 2000, J.L. was born in 2005, Mother and Husband have not divorced; Mother and Husband are both living; and Mother and Husband have resided together in the same house from 2000 to the present day without interruption. (§ 7540.)

The final sentence in Father's declaration reads, "Mother has since, unequivocally stated that her husband whom she was married to and living with when the child was born is the father of the minor child." Father's declaration is problematic because Father does not identify to whom Mother made the foregoing statement. As a result, one cannot know how Father came to have personal knowledge of Mother's statement. (Evid. Code, § 702 ["the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter"]; Evid. Code § 403, subd. (a)(2) ["The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when: [¶] . . . [¶] The preliminary fact is the personal knowledge of a witness concerning the subject matter of his testimony"].)

Father also filed the declaration of Father's attorney in support of his motion for joinder. The attorney's declaration reads, "[Husband] was married to the other parent during the conception and birth of the minor child. Additionally, [Husband] was present during the birth, named on the birth certificate as the father, and signed the birth

11

certificate acknowledging he is the father (See exhibit '1' attached hereto). Pursuant to Family Code section 7540, the Husband is presumed the father as the parties were married and cohabitating at the time of conception." (All caps. omitted.)

Father's attorney did not explain how he gained personal knowledge of the foregoing facts. (Evid. Code, §§ 403, subd. (a)(2), 702; see also *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 87 ["an affidavit is normally presumed to state matters personally known to the affiant and lacks evidentiary value, in a variety of civil contexts, when based on information and belief, or hearsay"].) The birth certificate attached to the declaration reads "void copy void copy" throughout the background of the document. Husband is named as J.L.'s father on the birth certificate; however, he does not appear to have signed the document. There is nothing authenticating the birth certificate. (Evid. Code, §§ 1400, 1401, subd. (a).)

Father filed a verified answer to the County's complaint. In the answer, Father wrote, "This is a child born to [Mother's] current marriage. [Husband] signed a voluntary declaration of paternity as well as the birth certificate. I do not believe I am the father. [Husband] is presumed the father as the minor child was born to their marriage."

Father did not explain how he has personal knowledge of the foregoing facts. (Evid. Code, §§ 403, subd. (a)(2), 702; see also *City of Santa Cruz v. Municipal Court*, *supra*, 49 Cal.3d at p. 87 ["an affidavit is normally presumed to state matters personally known to the affiant and lacks evidentiary value, in a variety of civil contexts, when based on information and belief, or hearsay"].) Copies of an authenticated marriage

12

certificate, an authenticated birth certificate, and an authenticated declaration of paternity are not attached to the answer. (Evid. Code, §§ 1400, 1401, subd. (a).)

During the hearing in the family court, the County argued, "[I]f the [H]usband and [Mother] are still indeed together, which is something that they're alleging. All that stuff is just an allegation and hearsay. We don't have any of those facts in evidence. We have no facts on their side in evidence."

As the hearing continued, Father's attorney asserted that a deputy county counsel who previously handled the instant case, Mr. Lorenzi, said that Mother told Mr. Lorenzi, " 'He's not the father.' " The County responded to Father's attorney, saying, "That's all hearsay and double hearsay." Father's attorney conceded, "And, yes, it's hearsay and, yes, it's probably even a second level of hearsay."

### d. Analysis

There is no evidence of solid value reflecting Mother was married to Husband. In the evidence provided, Father and Father's attorney failed to explain how they were personally aware that Mother was married to Husband. Additionally, there is no evidence of solid value reflecting Mother and Husband were cohabitating at the time J.L. was conceived. In the evidence provided, Father and Father's attorney failed to explain how they were personally aware of Mother's and Husband's past living arrangements. In sum, there is not substantial evidence that Mother and Husband were married or that Mother and Husband were cohabitating at the time J.L. was conceived. Accordingly, we conclude substantial evidence does not support the family court's application of the marital presumption. (§ 7540.)

13

3.    *NON-SPOUSE*

The next issue is whether a non-spouse may assert the marital presumption (§ 7540) as an affirmative defense in a child support case, or in support of a request for a judgment of non-paternity (§ 7636). We have concluded *ante*, that the family court's application of the marital presumption is not supported by substantial evidence. Our conclusion *ante* means we can provide no further relief concerning the marital presumption issue. As a result, the issue concerning Father's standing to raise the marital presumption is moot. (*In re David B.* (2017) 12 Cal.App.5th 633, 644 [issue is moot when no effective relief can be granted].)

D.    JUDGMENT OF NON-PATERNITY

The County contends the family court's judgment, reflecting Father is not J.L.'s parent (§ 7636), is not supported by substantial evidence.

Our Supreme Court has explained, "A declaration of presumed fatherhood entitles the presumed father to [greater rights than a natural father], but does not itself terminate the biological father's parental relationship with the child." (*In re Jesusa V.* (2014) 32 Cal.4th 588, 610.) In other words, the presence of a presumed father does not render a biological/natural father a legal stranger to the child. (*Ibid.* ["Paul's presumed fatherhood has [not] rendered Heriberto a legal stranger to the child"].)

Father's request for a judgment of non-paternity was based upon Father's theory that Husband is J.L.'s presumed father, and therefore Father cannot be J.L.'s father. As set forth *ante*, the family court's decision to apply the marital presumption (§ 7540) is not supported by substantial evidence. As a result, the theory supporting the judgment

14

of non-paternity is not supported by substantial evidence.  Moreover, if Husband is J.L.'s presumed father, that relationship would not automatically render Father a legal stranger to J.L., if Father is J.L.'s biological father.  (*In re Jesusa V.*, *supra*, 32 Cal.4th at p. 610.)  Accordingly, we will reverse the judgment.

E.    CONCLUSION

In sum, the family court erred by not ordering genetic testing (§ 7551); the family court's decision to apply the marital presumption is not supported by substantial evidence (§ 7540); and the family court's judgment of non-paternity is not supported by substantial evidence (§ 7636).

**DISPOSITION**

The judgment is reversed.  Appellant is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

CERTIFIED FOR PUBLICATION

MILLER _____
J.

We concur:

RAMIREZ _____
P. J.

SLOUGH _____
J.

15