Filed 1/29/26  Marriage of Pair CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ROBERT PAIR and JOAN PAIR. | |
| ROBERT PAIR,<br><br>Respondent,<br><br>v.<br><br>JOAN PAIR,<br><br>Appellant;<br><br>RENEE PAIR,<br><br>Respondent. | F089740<br><br>(Super. Ct. No. S-1501-FL-581081)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Donald Bryson Griffith, Judge.

LeBeau – Thelen, Andrew K. Sheffield, and S. Gwen Atherton for Appellant.

No appearance for Respondents.

-ooOoo-

This is a discovery sanctions matter that stems from attempts to collect on an award following a dissolution of marriage.  The trial court sanctioned appellant Joan Pair (Joan) and her counsel $3,000 for failing to meet and confer in good faith regarding objections that nonparty respondent Renee Pair (Renee) had made to a deposition subpoena.[1]  On appeal, Joan argues the court erred by:  (1) considering evidence without ruling on objections to that evidence; (2) considering the sanctions request despite the failure to follow the notice requirements of Code of Civil Procedure, section 2023.040;[2] (3) finding a sufficient factual basis for the amount of sanctions imposed; and (4) improperly finding that she failed to meet and confer in good faith.  We affirm the court's imposition of sanctions but remand for further proceedings to determine the reasonable amount of sanctions.

## BACKGROUND

In 2002, the trial court entered an order dissolving the marriage of Joan and Robert Pair (Robert).  In 2003, Robert married Renee.  In 2006, the court entered three money judgments in favor of Joan and against Robert:  an asset division for $438,621.40, an accounting fees award of $25,000, and an attorney fees award of $30,000.  Since 2006, these monetary judgments have been renewed, and the total outstanding balance is over $1.8 million.  A wage garnishment order against Robert yields $549.70 per month towards this debt.  Joan contends that instead of paying his debt to her, Robert avoids the judgments by transferring hundreds of thousands of dollars to Renee.

On November 8, 2024, Joan issued a deposition subpoena for Renee (the Subpoena).  The Subpoena was issued as part of Joan's efforts to collect on the monetary judgments against Robert.  The Subpoena included 30 requests for production and sought

---

[1]     The parties in this action all share the last name of Pair.  To avoid confusion, we refer to all relevant parties by their first name; no disrespect is intended.

[2]     Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

2.

information regarding Renee's financial information, transactions, and holdings, as well as financial gifts or benefits from Robert to Renee or financial assets held by Renee to which Robert had access.

On November 25, 2024, Robert filed a motion to quash the Subpoena. Robert argued in part that the Subpoena was overbroad and sought confidential information from third parties.

On November 27, 2024, Renee served objections to the Subpoena. In part, Renee objected the Subpoena was beyond the scope of discovery, violated her privacy, related to information that is not subject to collection, and was untimely.

On December 13, 2024, Joan sent a meet-and-confer letter to Renee's counsel. This letter addressed each of Renee's objections and explained why each request was appropriate. The letter requested Renee withdraw her objections to each of the items requested in the Subpoena. The letter concluded by stating if Joan did not hear from Renee by December 20, 2024, Joan would file a motion to compel.

On December 27, 2024, Renee's counsel sent an e-mail to Joan's counsel in response to the meet-and-confer letter. With respect to 10 of the requests, Renee's counsel stated that the documents (to the extent they existed) had already been produced but that Renee would confirm that all responsive documents had been produced. With respect to the remaining requests, counsel stated that the requests were not properly limited to accounts or property that may be subject to enforcement rights. For those requests, Renee stood on her objections. Renee's counsel concluded by stating he would confirm within a week that responsive documents had been provided and by requesting Joan's counsel to let him know if he would like to engage in further meet-and-confer efforts.

On January 2, 2025, the trial court denied Robert's motion to quash. Also on January 2, 2025, Joan's counsel sent an e-mail to Renee's counsel and again asked Renee to withdraw her objections in light of the court's denial of Robert's motion to quash,

3.

which raised similar issues as Renee's objections. Joan's counsel stated that if they did not hear from Renee by January 6, or receive all responsive documents by January 10, then a motion to compel would be filed.

On January 6, 2025, Renee's counsel stated that she would not be withdrawing her objections but would be willing to meet and confer further.

On January 17, 2025, Joan's counsel learned that Renee had retained new counsel, George Horrigan, and sent him an e-mail at 3:04 p.m. In the e-mail, Joan's counsel informed Horrigan that she was "preparing to file a motion on the subpoena" and asked if he was authorized to accept personal service of the motion and future motions.

On January 21, 2025, Horrigan sent an e-mail to Joan's counsel at 1:41 p.m. expressing his desire to meet and confer before any motion was filed. The same day at 4:32 p.m., Joan filed a motion to compel and a request for sanctions with respect to the Subpoena. The record indicates that Joan's counsel did not respond to Horrigan prior to filing the motion to compel.

On January 23, 2025, Joan's counsel e-mailed Horrigan. The e-mail stated that the motion to compel had already been filed and inquired about further meet-and-confer efforts. The same day, Horrigan responded that he would still like to meet and confer and asked for dates and times that Joan's counsel would be available.

On January 24, 2025, Joan's counsel provided various dates and times for further meet-and-confer efforts. Horrigan responded that he was available on January 28, and a telephone call was subsequently set for that day.

On January 28, 2025, Joan's counsel and Horrigan engaged in further meet-and-confer efforts but were unable to reach a resolution.

On January 29, 2025, Horrigan e-mailed Joan's counsel regarding the previous day's meeting. Horrigan explained that he was only representing Renee with respect to the Subpoena/deposition discovery dispute, Renee was in the process of collecting requested documents, and 60 additional days was needed to collect responsive

4.

documents. Horrigan formally asked if Joan would agree to a 60-day extension to respond to the Subpoena and a 60-day extension on the motion to compel hearing.

On January 30, 2025, Joan's counsel sent a responding e-mail to Horrigan. Joan's counsel stated that she was not agreeable to 60-day extension because Renee had had sufficient time to gather responsive documents and withdraw her objections. Joan's counsel did not believe that Renee would comply even with an additional 60 days and thus, did not agree to any extensions. Joan's counsel recognized that Horrigan was only recently retained but believed that fact did not outweigh the "long history of delay, obstruction, and evasiveness" regarding the monetary judgments against Robert.

On February 13, 2025, Renee filed an opposition to Joan's motion to compel. The opposition was in the form of a responsive declaration by Horrigan. The declaration contains some legal analysis, as well as a description of the relevant history between Joan and Renee from the filing of the Subpoena forward. Of note, the declaration described in detail the meet-and-confer meeting on January 28, 2025. In part, Horrigan explained that, at the January 28 meeting, he informed Joan's counsel that some responsive documents had been produced, sought clarification regarding the timing of the requests (some requests sought documents dating back to 2006 while others did not) and the meaning of some terms, noted the duplicative nature of some of the requests, stated that Renee wanted to be responsive to the Subpoena, and asked for a 60-day extension to respond to the Subpoena. Horrigan's declaration also requested sanctions under sections 1987.2, subdivision (a) and 2025.480, subdivision (j) for failing to meet and confer in good faith. Horrigan estimated that Renee had incurred $3,000 in attorney fees to defend against the motion to compel.

On February 20, 2025, Joan filed a reply. Joan also filed objections to Horrigan's declaration and requested the trial court rule on the objections prior to addressing the merits of the motion to compel. Joan's reply in part addressed Renee's request for

sanctions made in Horrigan's declaration and argued that sanctions were not appropriate for procedural and substantive reasons.

A hearing on the motion to compel was held on March 6, 2025, and the court issued a findings and order on April 15, 2025. The court's order: (a) granted objections as to request numbers 6 and 12 based on speculation and relevance; (b) denied the motion to compel and found that "[Joan's counsel] failed to meet and confer in good faith"; (c) granted $3,000 in sanctions payable to Renee; and (d) ordered Renee to produce records in response to the Subpoena on or before April 3, 2025. The court's order did not address Joan's objections to Horrigan's declaration.

On May 1, 2025, Joan appealed the order imposing $3,000 in sanctions. Although Joan has filed a timely opening brief in our court, Renee has not filed a responsive brief or otherwise appeared in this appeal.

## DISCUSSION

### I. Objections to the Horrigan Declaration.

#### A. *Joan's Argument.*

Joan argues the trial court erred in overruling her lack of personal knowledge and foundation objections to the entirety of Horrigan's declaration. Joan argues that Horrigan did not have personal knowledge of: opposing counsel's thought process, the intent or thought process of Renee's former counsel, conversations or discovery conduct prior to his appearance in the case, or ownership of Renee's assets. Joan also indicates the trial court erred by overruling objection number 39, which objected to the $3,000 estimated attorney fees.

#### B. *Legal Standard.*

Lay witnesses must have personal knowledge of the facts to which they testify. (Evid. Code, § 702, subd. (a); *People v. Caro* (2019) 7 Cal.5th 463, 503.) Personal knowledge means " 'a present recollection of an impression derived from the exercise of the [witness's] own senses.' " (*People v. Lewis* (2001) 26 Cal.4th 334, 356 [*Lewis*].)

6.

When there is an objection, the lay witness's personal knowledge must be shown before the witness may provide his testimony. (Evid. Code, § 702, subd. (a); *People v. Sanchez* (2019) 7 Cal.5th 14, 33.) A lay witness's personal knowledge "may be shown by any otherwise admissible evidence, including his own testimony." (Evid. Code, § 702, subd. (b); *People v. Leahy* (1994) 8 Cal.4th 587, 591.) In the absence of personal knowledge, a lay witness's testimony or a declarant's statements are akin to speculation and hearsay and thus, inadmissible. (*Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 601; see Evid. Code, § 702, subd. (a).) A trial court's decision that a lay witness possess the requisite personal knowledge is reviewed for an abuse of discretion. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 168–169; *Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1572; *Tutti Mangia Italian Grill, Inc. v. American Textile Maintenance Co.* (2011) 197 Cal.App.4th 733, 743, fn. 3 (*Tutti Mangia*).) A trial court may abuse its discretion when its ruling is outside the bounds of reason. (*People v. Kopatz* (2015) 61 Cal.4th 62, 85.)

### C.    *Analysis.*

The trial court did not expressly address Joan's objections to the Horrigan declaration. Accordingly, we presume the trial court overruled the objections and both admitted and considered the declaration. (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1089; Rules of Court, rule 5.111(c)(2).) However, in order for us to consider Joan's objections, she must renew those objections by advancing arguments on the objections in her appellate brief and not by merely incorporating by reference arguments contained in her trial court filing. (*Duffey v. Tender Heart Home Care Agency, LLC* (2019) 31 Cal.App.5th 232, 251, fn. 17; *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 854.) Under this rule, we are satisfied that Joan has preserved for review her personal knowledge or foundation objections with respect to the Horrigan declaration "as a whole" and to objection 39 ("Objection 39"). All other objections merely reference Joan's objections that were filed in the trial court and

7.

therefore have not been sufficiently "renewed" before us. (*Duffey*, at p. 251, fn. 17; *Serri*, at p. 854.) So, viewing the issues before us, we detect no abuse of discretion.

### 1. Horrigan Declaration as a Whole.

Initially, we note the Horrigan declaration does not contain an express statement that it was made with or based on Horrigan's personal knowledge. However, simply because this attestation is missing does not mean the declaration "as a whole" is invalid. A declaration that does not expressly attest that it is based on personal knowledge will not be stricken if the facts contained therein demonstrate the declarant actually possesses personal knowledge of the recounted facts. (*Tutti Mangia*, *supra*, 197 Cal.App.4th at p. 743, fn. 3.)

A review of Horrigan's declaration establishes that he in fact did have personal knowledge of many of the facts asserted in his declaration. The declaration's opening paragraph states that he was retained to represent Renee in this discovery dispute. Consistent with that assertion, the declaration describes in part correspondences and meetings between Horrigan and Joan's counsel. As an actual participant in correspondences and meetings with Joan's counsel regarding the motion to compel and the related Subpoena, Horrigan's description of those particular correspondences and meetings would clearly be based on Horrigan's personal knowledge. (See *Lewis*, *supra*, 26 Cal.4th at p. 356 [defining "personal knowledge"].) Therefore, because the declaration itself establishes that Horrigan had personal knowledge of at least the correspondences and meetings between himself and Joan's counsel, the trial court correctly overruled Joan's personal knowledge and foundation objections to Horrigan's declaration "as a whole." (See Evid. Code, § 702, subd. (b); *Tutti Mangia*, *supra*, 197 Cal.App.4th at p. 743, fn. 3.)

### 2. Objection 39.

Objection 39 objected to the following paragraph in Horrigan's declaration:

"We also respectfully request the Court order Respondent pay Renee Pair monetary sanctions, per CCP 1987.2(a) and 2025.480(j), to cover her attorney[] fees and costs incurred to defend against, including preparing a response to, [Joan's] motion to compel, which Renee Pair otherwise would not have incurred but for Respondent's conduct – these are estimated to be $3,000[]."

Joan's objection that the above paragraph lacks foundation, or is not based on personal knowledge, is without merit. The paragraph relates to attorney fees incurred by Renee with respect to the motion to compel. The motion to compel was filed after Horrigan was retained as Renee's counsel. Further, the "response" to the motion to compel that is referenced in the above paragraph appears to be Horrigan's own declaration. As Renee's retained counsel, Horrigan would indisputably have personal knowledge of the work that he performed for, and the fees he charged to, Renee. (See *Lewis*, *supra*, 26 Cal.4th at p. 356 [defining "personal knowledge"].) Because the declaration itself establishes that Horrigan had personal knowledge of the work he performed for, and of the fees he charged to, Renee with respect to the motion to compel, the trial court correctly overruled Objection 39. (See Evid. Code, § 702, subd. (b); *Tutti Mangia*, *supra*, 197 Cal.App.4th at p. 743, fn. 3.)

## II. Procedural Propriety of the Horrigan Declaration's Request for Sanctions.

### A. *Joan's Argument.*

Joan argues the trial court erred by considering Renee's request for sanctions because Renee did not follow statutory notice requirements. Joan argues that Renee was required to file a notice of motion, a memorandum of points and authorities, and a declaration, but only the Horrigan declaration was filed. Joan argues this statutory noncompliance deprived her of due process and requires the reversal of the sanctions award.

### B. *Legal Standards.*

California law provides that a trial court may impose monetary sanctions for a party or an attorney's misuse of the discovery process "after notice to any affected party,

9.

person, or attorney, and after opportunity for hearing ….” (§ 2023.030, subd. (a); *Agnone v. Agnone* (2025) 111 Cal.App.5th 758, 763 (*Agnone*); see *Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 207 [applying former § 2023, subd. (b)].) A “ ‘court denies due process by sanctioning a party . . . who lacked notice of efforts to seek the sanction.’ ” (*London v. Dri-Honing Corp.* (2004) 117 Cal.App.4th 999, 1008; see also *Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 82 [“At its core, due process entitles a person to notice and the opportunity to be heard before a neutral decision maker”].)

> **C.      *Analysis.***

The Horrigan declaration’s request for sanctions meets the requirements of section 2023.030, subdivision (a). The Horrigan declaration in relevant part stated that Joan was subject to sanctions for misusing the discovery process by failing to meet and confer in good faith in violation of section 2023.010 and requested monetary sanctions against Joan to cover the expenses incurred to defend against the motion to compel. Moreover, the record indicates that Joan’s counsel was personally present at the March 6, 2025, hearing, and nothing suggests Joan was prevented from making arguments about Renee’s sanctions request at the hearing. Further, Joan was clearly aware of the request for sanctions because her reply brief addressed the request and argued that sanctions should not be imposed against her. Therefore, the record shows Renee complied with section 2023.030, and Joan was not denied due process. (§ 2023.030, subd. (a); *Kwan Software Engineering, Inc. v. Hennings*, *supra*, 58 Cal.App.5th at p. 82; *London v. Dri-Honing Corp.*, *supra*, 58 Cal.App.4th at p. 1008.)

Joan argues that Renee failed to comply with section 2023.040. Section 2023.040 provides:

> “A request for sanction shall, in the notice of motion, identify every person, party, and attorney against whom the sanction is sought, and specify the type of sanction sought. The notice of motion shall be supported by a memorandum of points and authorities, and accompanied by

10.

a declaration setting forth facts supporting the amount of any monetary sanction sought." (§ 2023.040.)

We agree with Joan that Renee's request for sanctions does not appear to comply with section 2023.040. The request for sanctions does not include a separately filed notice of motion, and the request is not supported by a separately filed memorandum of points and authorities or a separately filed declaration.

Despite this apparent noncompliance, we are not satisfied that the trial court erred for at least two reasons. First, it has been recognized that a party may seek sanctions as part of an opposition to a motion to compel. (*Dalessandro v. Mitchell* (2019) 43 Cal.App.5th 1088, 1092; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025) ¶ 8:1991 (Weil & Brown).) When a party requests sanctions as part of an opposition, a separately filed and noticed motion is not required. (*Dalessandro*, at pp. 1092–1093; Weil & Brown, at ¶ 8:1991.) Thus, in essence, the procedural requirements of a section 2023.040 are inapplicable when a request for sanctions appears in an opposition to a motion to compel. (*Dalessandro*, at pp. 1092–1093; Weil & Brown, at ¶ 8:1991.) Second, the Horrigan declaration complies with the substance of section 2023.040. In relevant part, the Horrigan declaration identified Joan as the party to be sanctioned and sought monetary sanctions in the form of the fees and costs incurred from opposing the motion to compel. The Horrigan declaration also cited and relied on sections 2016.040, 2023.010, and 2025.480, included factual recitations regarding the meet-and-confer efforts between Horrigan and Joan's counsel, and made arguments regarding why the meet-and-confer efforts were not made in good faith. Finally, the Horrigan declaration requested $3,000 in attorney fees. No further substantive information is required by section 2023.040.[3] For these reasons, there was no

---

[3] It is true that all this information was contained in a single declaration, and that some courts of appeal have criticized and discouraged the use of such "hybrid" declarations. (E.g. *County of Riverside v. Estabrook* (2019) 30 Cal.App.5th 1144, 1153.) Nevertheless, all the substantive information required by section 2023.040 is contained

error with respect to section 2023.040. (*Dalessandro*, at pp. 1092–1093; Weil & Brown, at ¶ 8:1991.),

Finally, Joan argues that she was not provided with the required 16 court days' notice under section 1005. However, because the request for sanctions was made as part of an opposition to the motion to compel, Renee was required to provide Joan with a minimum of nine court days' notice, not 16. (§ 1005, subd. (b); Weil & Brown, *supra*, at ¶ 8:1991.) Joan admits that she did in fact receive nine court days' notice. Therefore, Joan received all of the "timing" notice to which she was entitled.[4] (Weil & Brown, at ¶ 8:1991.)

In sum, Joan has not shown a procedural error with respect to Renee's request for sanctions.

## III. Sufficiency of the Evidence Regarding Meet-and-Confer Efforts

### A. *Joan's Argument.*

Joan argues the trial court abused its discretion by finding she failed to meet and confer in good faith. Joan argues there has been a concerted effort by Robert and Renee to avoid paying any of the judgments against Robert. Despite this effort, Joan argues she engaged in four meet-and-confer efforts, two of which occurred after the motion was filed. Joan contends Renee never offered to compromise or retract her objections, rather she engaged in disingenuous meet-and-confer efforts. Given the entire history regarding the Subpoena and the motion to compel, Joan argues it is apparent she met in good faith.

---

within the Horrigan declaration, and the trial court clearly considered that declaration in its decision to sanction Joan. Under such circumstances, we will not find error in the court's decision to consider the declaration.

[4]     We note that there is an ambiguity as to when the hearing on Joan's motion to compel occurred. Joan's opening brief stated that the hearing took place on February 27, 2025. On the other hand, the order on the motion to compel indicates that the hearing was held on March 6, 2025. Regardless, Joan's opening brief states that she received the mandated nine court days' notice for an opposition.

**B.**     *Additional Background.*

In relevant part, the Horrigan declaration described the following meet-and confer-efforts between Horrigan and Joan's counsel:

"Second, Renee Pair hired me to represent her regarding discovery matters (namely, the November 2024 Deposition Subpoena). [Joan] was aware of my involvement prior to filing [her] motion to compel – [Joan's] Counsel sent an email only to my email address on Friday, January 17, 2025 at 3:04 p.m., after my office had closed for business (our hours of operation are 8:00 a.m. to 12:30 p.m. on Fridays), vaguely stating '*We received notice that you now represent Renee Pair with regard to the subpoena issued to her [...] We are preparing to file **a motion on the subpoena.**'* (emphasis added.) They asked if we would accept service of their motion. [Citation.] They did not leave a voice mail. They did not state what type of motion. As the Court is aware, Monday January 20, 2025 was a holiday (Birthday of Martin Luther King, Jr.); our office was also closed that Monday in observance. My office responded to the January 17th email on Tuesday, January 21, 2025, at **1:41** p.m., including all the members of [Joan's] Counsel's office that were originally carbon copied on their January 17, 2025, email to me. We stated, "***Mr. Horrigan would like to meet and confer <u>prior to you filing the motion</u>.*** *Please let me know some days and times you are available.*" (emphasis added) … **Despite being on notice of our request to meet and confer, rather than meet and confer with Renee Pair's current attorney for the Deposition Subpoena, [Joan] proceeded to file their motion to compel against Renee Pair anyway.** As noted above, those filings omitted all mention of these events. The filing of their Notice of Motion and related pleadings in support all reflect the filings were submitted at 4:32 p.m. on January 21, 2025, <u>multiple hours *after* our request to meet and confer</u>. They did not call our office on January 21, 2025 or January 22, 2025, or otherwise respond to our request to meet and confer. Rather, per their own Proof of Service, instead proceeded to serve Renee Pair directly with the motion pleadings at 6:59 p.m. on January 22, 2025.

"It was only on January 23, 2025, at 8:41 a.m., ***over two days later***, that they responded to my first request to meet and confer, stating, '*We've received your email however the motion to compel has already been filed.*' This was the first time they told us the exact nature of the motion. They indicated they were still willing to meet and confer about the Deposition Subpoena if we were still interested, but they did not offer dates or times to do so. [Citation.] Our office confirmed we were still interested in a meet

and confer, and followed up asking for their availability (dates and times); consequently, after *two requests by our office*, a meet and confer call was set between Ms. Atherton ([Joan's] counsel) and I for January 28, 2025, at 2:00 p.m.

[¶ … ¶]

"[Joan's] Counsel did not meet and confer with me until I asked a *second* time, and proceeded to file the motion to compel *after* knowing about my *first request* to meet and confer. [Joan's] Counsel was not being stonewalled; we tried to meet and confer before they even filed this motion [to compel] and [Joan's] Counsel ignored that, and omitted any mention of it, as it did not fit the false narrative they want the Court to believe. Renee Pair's attached declaration explains she is making diligent efforts to locate and produce the items sought, to the extent they exist. Litigation was not the only choice the way [Joan's] moving filings for this motion entreat the Court [to] believe. That was not the case on January 21, 2025, at 4:32 p.m. [when the motion to compel was filed], and it is not the case presently. Their actions were not in good faith, but were without substantial justification: consequently, imposing sanctions against Renee Pair as [Joan] requests would therefore be unjust."

## C.     *Legal Standards.*

A party may be sanctioned for failing to meet and confer in a good faith attempt to informally resolve a discovery dispute. (§ 2023.010, subd. (i); *Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1293, fn. 13 (*Clement*); see also § 2023.020.) The degree of effort that will constitute a "reasonable and good faith attempt" at informal resolution will depend on the circumstances. (*In re Marriage of Moore* (2024) 102 Cal.App.5th 1275, 1294 (*Moore*); *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431.) In addition to the complexity of the case, the "history of the litigation, the nature of the interaction between counsel, the nature of the issues, the type and scope of discovery requested, the prospects for success and other similar factors can be relevant." (*Obregon*, at p. 431; see *Moore*, at p. 1294.) Although it is also appropriate to consider whether additional effort appears likely to bear fruit (as judged by the perspective of a reasonable person in the discovering party's position), some level of effort at informal resolution is nevertheless required in all instances. (*Clement*, at pp. 1293–1294.) Judges have broad powers and

14.

responsibilities to determine what measures and procedures are appropriate in a particular case, and, because the judge's perceptions on a party's efforts are inherently factual, the judge's sanction determinations will not be lightly disturbed. (*Moore*, at p. 1294; *Obregon*, at p. 431.)

Monetary sanctions for misuse of the discovery process are to be imposed unless "the one subject to the sanction acted with substantial justification" or "other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a); *City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 62 (*City of Los Angeles*).) "Substantial justification" under section 2023.030 means "a justification that is clearly reasonable and well grounded in both law and fact." (*Atlas v. Davidyan* (2025) 113 Cal.App.5th 1086, 1096 (*Atlas*); *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434–1435.) The party seeking to avoid being sanctioned bears the burden of establishing that it acted with a substantial justification. (*Atlas*, at p. 1096; *Doe*, at p. 1435.)

A trial court's decision to impose discovery sanctions will be reversed as an abuse of discretion if the decision was arbitrary or capricious, exceeded the bounds of reason under the circumstances, or transgressed the confines of the applicable principles of law. (See *Atlas*, *supra*, 113 Cal.App.5th at p. 1095; *Moore*, *supra*, 102 Cal.App.5th at p. 1294.) The factual findings that underpin a discovery sanction order are reviewed for substantial evidence, irrespective of whether that evidence is contradicted or uncontradicted. (*Victor Valley Union High School Dist. v. Superior Court* (2023) 91 Cal.App.5th 1121, 1137.) In the absence of express findings, appellate courts will review the trial court's decision based on implied finding that are supported by the record. (*Agnone*, *supra*, 111 Cal.App.5th at p. 767.) In determining whether substantial evidence supports a court order, the record is viewed in the light most favorable to the order and all reasonable inferences are drawn in support of the order. (*Ibid.*)

**D.** *Analysis.*

The trial court did not make any express findings with respect to the discovery sanction order. As a result, we review the record based on implied findings that are supported by substantial evidence. (*Agnone*, *supra*, 111 Cal.App.5th at p. 767).

Viewed in the light most favorable to the trial court's order, the record reflects that Joan sent an e-mail correspondence to Horrigan on Friday, January 17, 2025. The e-mail was sent relatively late in the day and at a time when Horrigan's office had closed, 3:04 p.m. The January 17 e-mail does not expressly identify the motion to compel and did not make any request to meet and confer. On Monday, January 20, 2025, Horrigan's office was closed in observance of Martin Luther King, Jr.'s birthday, which is a holiday recognized and observed by the State of California. (*Mitchell v. Atwell Island Water Dist.* (2020) 45 Cal.App.5th 624, 634–635.) On Tuesday, January 21, 2025, at 1:41 p.m., Horrigan replied to Joan's counsel, as well as to four other members of the firm who were carbon copied on the January 17 e-mail. Horrigan's response stated that he wanted to meet and confer with respect to the unidentified motion. Joan's counsel waited three hours and filed the motion to compel at 4:32 p.m. without contacting Horrigan. The deadline for filing a motion to compel appears to have been January 24, 2025 (as represented by Joan). Joan's counsel did not respond to Horrigan until two days later on January 23 and stated that the motion to compel had already been filed. Additionally, Horrigan's description of the meet-and-confer meeting that was held on January 28, 2025, indicates that Renee intended to respond to the Subpoena in part by producing records and confirming that some records had already been produced, but that given the breadth of the Subpoena, 60 additional days were needed. When the trial court ruled on the motion to compel and Renee's objections, two objections were sustained, the motion to compel was denied, and a deadline was set for the production of documents that was a little more than 60 days after the January 28 meet-and-confer meeting.

Counsel are required to expend some effort to meet and confer regarding a discovery conflict, even if they harbor significant pessimism that their efforts may be unfruitful. (*Clement*, *supra*, 177 Cal.App.4th at pp. 1293–1294.) Considering the above evidence, the trial court could have reasonably concluded that no effort to meet and confer was made by Joan with respect to Renee's new counsel prior to filing the motion to compel. Specifically, the court could reasonably conclude that the initial e-mail to Horrigan was sent late in the day on a Friday before a holiday, the e-mail did not expressly identify a motion to compel and made no reference to a meet and confer despite knowing that new counsel was now representing Renee. Considering the Martin Luther King, Jr. holiday, the court could reasonably conclude that a response to the January 17 e-mail should have been expected on or by Tuesday the 21st. Additionally, and of significant import, the motion to compel was filed three hours after Horrigan asked to meet and confer about Joan's unidentified motion. At the time the motion to compel was filed, there were three and a half days left before the expiration of the motion to compel deadline. Despite new counsel's willingness to meet and confer and having time to do so, as well as Joan's counsel's awareness that Horrigan was new to the case, Joan chose to file the motion to compel without meaningfully communicating with Horrigan. The trial court could reasonably view such actions as a misuse of the discovery process for failing to meet and confer. (*Ibid.*) Further, in light of Horrigan's recent retention and noninvolvement in prior meet-and-confer efforts, as well as the fact that there was sufficient time to communicate with Horrigan before a deadline lapsed, no compelling reason or substantial justification is apparent for Joan's failure to respond to Horrigan and attempt to meet and confer before filing the motion to compel. (*Atlas*, *supra*, 113 Cal.App.5th at p. 1096.)

Additionally, the trial court could have reasonably concluded that good faith meet-and-confer efforts would have been fruitful and alleviated the need for the motion to compel. The court's resolution of the discovery motions was consistent with what

17.

Horrigan had discussed with Joan's counsel at the January 28 meet-and-confer meeting, including the request for an additional 60 days and Renee's willingness to try and produce responsive documents. Specifically, the motion to compel was denied, two objections were sustained, and Renee was ordered to produce documents in a timeframe that was slightly more than the 60 days she requested informally on January 28 and formally on January 29. In other words, it appears that if Joan had agreed to the 60-day extension that was requested on January 28 or January 29, she would have actually received the discovery responses sooner than the April 3, 2025, production deadline set by the court.

In sum, we are satisfied that substantial evidence supports the trial court's determination that Joan failed to meet and confer in good faith without substantial justification prior to filing the motion to compel. Considering the above evidence, as well as the court's broad discretion with respect to discovery sanctions, the court did not abuse its discretion by finding monetary sanctions were appropriate. (*Atlas*, *supra*, 113 Cal.App.5th at pp. 1095–1096; *Agnone*, *supra*, 111 Cal.App.5th at p. 767; *Moore*, *supra*, 102 Cal.App.5th at p. 1294; *Clement*, *supra*, 177Cal.App.4th at pp. 1293–1294.)

## IV. Sufficiency of the Evidence to Support the Amount of Sanctions.

### A. *Joan's Argument.*

Joan argues the trial court erred in awarding $3,000 in attorney fees. Joan argues that, even though attorney fees must be reasonable and based on expenses actually incurred, the Horrigan declaration provided only an estimate of the expenses incurred and gave no indication that the fees were actually incurred or what work was done, what a reasonable hourly rate was, or how many hours were actually spent defending the motion to compel.

### B. *Legal Standard.*

Attorney fees are recoverable as a discovery sanction for the misuse of discovery in general and for failing to meet and confer in good faith in particular. (§§ 2023.020,

18.

2023.030, subd. (a)).  However, trial courts must "be mindful not to impose sanctions that exceed 'the *reasonable* expenses, including attorney's fees, incurred by anyone *as a result* of' the discovery misconduct."  (*City of Los Angeles*, *supra*, 17 Cal.5th at p. 75, italics added in original [quoting § 2023.030, subd. (a)].)  Thus, an award of attorney fees is limited to a party's reasonable and actual fees incurred as a result of the discovery misuse.  (*In re Marriage of Niklas* (1989) 211 Cal.App.3d 28, 37–38; see also *Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 790–791.)

## C.    *Analysis.*

The only basis for the $3,000 sanction amount is the Horrigan declaration, which simply estimated that Renee incurred $3,000 to defend against the motion to compel.  However, we agree with Joan that the estimated figure alone is insufficient to establish that Renee incurred reasonable fees of $3,000.  As correctly pointed out by Joan, the Horrigan declaration does not set a reasonable hourly rate, does not explain what tasks are included within the $3,000 estimation, and does not include any figures for hours worked.  We understand that counsel is generally not required to submit detailed time records in support of a request for attorney fees.  (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.)  Nevertheless, more is required than the single conclusory sentence at the end of the Horrigan declaration.  (Cf. *Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 737–738 [holding that a sanction award was inadequately supported by an attorney's declaration that contained no hourly rates or any type of accounting of time spent on the matter].)  The single sentence does not provide sufficient information for us to review what fees were incurred and whether the fees were reasonable.  Without such information, we must conclude that the $3,000 amount is insufficiently supported and remand this matter for further proceedings.  (*Garcia*, at pp. 737–738 [vacating a sanction award and remanding for recalculation where the amount of attorney's fees awarded was inadequately supported]; *In re Marriage of*

19.

*Niklas*, *supra*, 211 Cal.App.3d at pp. 37–39 [remanding matter for recalculation of attorney fees where record was insufficient to determine which tasks and fees were related to discovery misuse].)

## **DISPOSITION**

The trial court's award of $3,000 as a discovery sanction against Joan Pair is reversed and this matter is remanded for the trial court to determine the amount of sanctions necessary to reimburse Renee Pair for the reasonable attorney fees and costs incurred as a result of Joan Pair's failure to meet and confer prior to filing her motion to compel.  The court's sanction order is otherwise affirmed.  In the interests of justice, the parties will bear their owns costs on appeal.


LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


PEÑA, J.